THOMAS E. MOSS
UNITED STATES ATTORNEY

KIM R. LINDQUIST
ASSISTANT UNITED STATES ATTORNEY

TERRY L. DERDEN
FIRST ASSISTANT UNITED STATES ATTORNEY
    and CRIMINAL CHIEF

DISTRICT OF IDAHO

DAVID B. DEITCH
TRIAL ATTORNEY, UNITED STATES DEPARTMENT OF JUSTICE

WELLS FARGO BUILDING
877 WEST MAIN STREET, SUITE 201
BOISE, IDAHO  83702
TELEPHONE:  (208) 334-1211
MAILING ADDRESS:
  BOX 32
  BOISE, IDAHO  83707

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, | ) | Cr. No. CR 03 - 0048 - C - EJL |
|---|---|---|
| Plaintiff, | ) | SECOND SUPERSEDING INDICTMENT |
| vs. | ) | (Vio. 18 U.S.C. 371 , 956, 2339A, 2339B, 1546(a), 1001(a)(2), 3237, 3238) |
| SAMI OMAR AL-HUSSAYEN, | ) | |
| Defendant. | ) | |

THE GRAND JURY CHARGES:

### COUNTS 1 THROUGH 3:
### THE MATERIAL SUPPORT AND RESOURCES CHARGES

#### Introduction

1.      From on or about September 13, 1994, to on or about February 26, 2003, the defendant, **SAMI OMAR AL-HUSSAYEN**, provided and conspired with others to provide material support and resources (a) to persons engaged in acts of terrorism and (b) to at least one prohibited terrorist

1

organization.  Specifically, at various times, **AL-HUSSAYEN** unlawfully provided to terrorists and terrorist organizations, directly and indirectly, expert advice and assistance, communications equipment, currency, monetary instruments, financial services and personnel by, among other things, creating and maintaining internet websites and other internet media designed to recruit mujahideen and raise funds for violent jihad in Israel, Chechnya and other places.

### Background

2.      The defendant, **SAMI OMAR AL-HUSSAYEN**, is a citizen of Saudi Arabia.  Between on or about August 7, 1994, and on or about February 26, 2003, **AL-HUSSAYEN** studied in the United States as a foreign student, obtaining a Masters of Science degree and attending doctoral courses in computer science.  During that same period of time, **AL-HUSSAYEN** occasionally left the United States and traveled to Saudi Arabia and other places.  On several occasions when **AL-HUSSAYEN** returned to the United States, as more fully described in paragraphs 35 through 75 below, he misrepresented and concealed from federal immigration authorities and others the nature of his activities and affiliations in the United States.

3.      As used in this Second Superseding Indictment:

a.      "Violent jihad" refers to the taking of action against persons or governments that are deemed to be enemies of a fundamentalist version of Islam.  Historically, violent jihad has included armed conflicts and other violence in numerous areas of the world, including Afghanistan, Chechnya, Israel, the Philippines and Indonesia.  The armed conflicts in these geographic areas and elsewhere have involved murder, maiming, kidnaping, and destruction of property.

b.      The term "fatwa" is an Arabic word meaning "edict," and refers to a statement or pronouncement by a Muslim cleric interpreting Islamic law.  Frequently, a fatwa declares whether a particular action is permissible under, or required by, Islamic law.

c.      The term "mujahid" is an Arabic word meaning "one who struggles" or "holy warrior," and refers to an individual who engages in violent jihad.  "Mujahideen" is the plural form of "mujahid."

4.      At all times pertinent to this Second Superseding Indictment:

2

a.      The Islamic Assembly of North America ("IANA") purported to be a non-profit charity organized pursuant to the laws of the United States.  Between on or about January 1, 1999, and on or about February 26, 2003, the IANA maintained offices in Ann Arbor, Michigan.  Among other things, the IANA provided a number of websites and other internet-related outlets for disseminating information regarding Islam, as well as for soliciting and receiving donations of monies from within and outside the United States.  As detailed below, IANA-sponsored websites included a variety of materials intended to recruit mujahideen and raise funds for violent jihad.  The IANA also hosted regular conferences in the United States, with participation by individuals affiliated with other purported charitable organizations in the United States.

b.      The Al-Haramain Islamic Foundation was a purported charity centered in Saudi Arabia.  Since its creation, Al Haramain has developed a world-wide network of offices and representatives in various locations throughout the world, including Saudi Arabia, the United States (Ashland, Oregon), Chechnya, Bosnia, Somalia, Indonesia, Pakistan and Kenya.  Among other things, Al Haramain disseminates materials through various media, including the internet, espousing fundamentalist Islamic doctrine.  The United States Government has designated numerous branches of Al-Haramain as Specially Designated Global Terrorists pursuant to the International Emergency Economic Powers Act, 50 U.S.C. § 1701, as implemented by Executive Order 13224.

c.      Dar Al-Asr was an information technology company in Saudi Arabia.

### Defendant's Affiliation With The IANA, Al-Haramain And Dar Al-Asr

**IANA**

5.      At various times between on or about November 16, 1999, and on or about February 26, 2003, **AL-HUSSAYEN** was an employee, official and registered agent of the IANA.  As such, he engaged in significant decision-making and business transactions related to the IANA's business, particularly with respect to the creation, maintenance and content of websites and other internet media.  **AL-HUSSAYEN** also was involved in planning at least one IANA conference and attended and participated in others.

3

6.      While **AL-HUSSAYEN** was a student in the United States, he received a stipend for living expenses from a foreign source. During that same time, **AL-HUSSAYEN**, at various times, maintained at least six United States bank accounts in Indiana, Texas, Idaho and Michigan. From at least January 23, 1997, until February 26, 2003, **AL-HUSSAYEN** received into and disbursed out of these accounts hundreds of thousands of dollars in excess of the stipend he received during the same period of time.

7.      Beginning on or about November 16, 1999, **AL-HUSSAYEN** disbursed funds to and on behalf of the IANA and its officers (including its president) to pay various operating expenses, including employee salaries and foreign and domestic IANA-related travel expenses for himself and others.

8.      Between on or about November 16, 1999, and on or about February 26, 2003, **AL-HUSSAYEN** frequently communicated with the president of the IANA via telephone, e-mail and face-to-face meetings. During that same time, **AL-HUSSAYEN** disbursed money directly to the president of the IANA via wire transfers and personal checks and maintained a checking account in Michigan in his name alone, but with the president's home address.

**The Al-Haramain Islamic Foundation**

9.      At various times between on or about November 10, 2001, and on or about February 26, 2003, **AL-HUSSAYEN** provided expert internet-related services to Al-Haramain and its officials. Additionally, **AL-HUSSAYEN** signed a at least one contract on behalf of Al-Haramain, thereby representing he was authorized to do so.

**Dar Al-Asr**

10.      From at least in or around August 1999, to in or around February 2003, **AL-HUSSAYEN** was a representative and official of Dar Al-Asr in the United States. In that capacity, he signed at least one contract on behalf Dar Al-Asr, thereby representing he was authorized to do so. Additionally, **AL-HUSSAYEN** had financial and operational responsibility for various websites and website domains owned by and/or affiliated with Dar Al-Asr.

4

### Defendant's Internet-Related Services And Activities
### As Material Support And Resources For Terrorists

11.    As described below, **AL-HUSSAYEN** helped create, operate and maintain various websites and other internet media associated with the IANA, Al-Haramain, Dar Al-Asr and two prominent Saudi clerics. **AL-HUSSAYEN** also exercised significant control over the operation and content of those websites and other internet media, many of which contained materials designed and intended to recruit mujahideen and raise funds for violent jihad. In e-mails to **AL-HUSSAYEN** and others, IANA and Al-Haramain officials expressly recognized **AL-HUSSAYEN's** expertise and deferred to him on decisions regarding the content and management of the websites. **AL-HUSSAYEN** thus knew and intended that:

a.    The websites and other internet media he helped create, operate and maintain through his expert advice and assistance would be and were used to support and justify violent jihad; and

b.    His expert advice and assistance were directly and integrally linked to ongoing efforts to provide personnel, currency, monetary instruments, and other material support and resources for acts of terrorism and to prohibited terrorist organizations, as well as to conceal and disguise the nature, location, source and ownership of such material support and resources.

### The Websites: General Recruitment
### And Fundraising For Violent Jihad

12.    From at least on or about October 2, 1998, to on or about February 26, 2003, **AL-HUSSAYEN** provided extensive computer and internet-related services, advice, assistance and support to organizations and individuals, including the IANA, Dar Al-Asr and two prominent Saudi clerics. This included, but was not limited to **AL-HUSSAYEN's** creation, registration, management, administration and maintenance of websites, many of which contained materials designed and intended to recruit mujahideen and raise funds for violent jihad. Additionally, **AL-HUSSAYEN** and others, known and unknown to the Grand Jury, published or broadcasted a wide variety of speeches, lectures and articles justifying and glorifying violent jihad, as well as graphic videos depicting mujahideen and other subjects relating to violent jihad, with the intent to inspire viewers to engage in and provide financial support for violent jihad.

13.    More specifically, at various times pertinent to this Second Superseding Indictment, **AL-HUSSAYEN** and others, known and unknown to the grand jury, assisted the IANA in creating, operating and maintaining websites designed and intended to recruit mujahideen and raise funds for violent jihad.  This included, but was not limited to, the following websites, one or more of which contained explicit calls for violence against non-Muslims and urged visitors to participate in or make financial contributions to support violent jihad:

a.    www.al-multaqa.com, a website that included the online publication of "Al-Multaqa," an Arabic language magazine of which **AL-HUSSAYEN** was a member of the Board of Editors, which was created on April 5, 1999, and registered to "Al-Multaqa" at a Moscow, Idaho address used by **AL-HUSSAYEN**.  At times pertinent to this Second Superseding Indictment, this website published the following articles which also were found on **AL-HUSSAYEN's** home computer: "The World's Bravest People" (extolling the Chechen mujahideen (warriors) and asking Allah to destroy the Russian army and make their wives into widows), "Jihad in the Qur'an and the Sunnah", "The True Meaning of Shaheed" (stating that to die as a shaheed (martyr) is the ultimate honor), "The Objectives and Aims of Jihad"; and "The Religious and Moral Doctrine on Jihad;"

b.    www.islamway.com, a website created on August 18, 1998 and registered to the IANA.  **AL-HUSSAYEN** was the director, administrator and advisor to other webmasters of this website, in creating, maintaining and controlling the site's format and content;

c.    www.alasr.ws, an internet magazine created on September 11, 2000, with **AL-HUSSAYEN** as the sole registrant, editor of the magazine and administrator of the website, and on which **AL-HUSSAYEN** and others, known and unknown to the Grand Jury, published several fatwas justifying and encouraging violent jihad, including suicide attacks, on or about May 15, 2001;

d.    www.iananet.org, a website created on August 1, 1995, registered to the IANA, and subsequently designed and maintained by Dar Al-Asr;

c.    www.almanar.net, a website created on October 2, 1998, and registered to Al-Manar Al-Jadeed Magazine, with **AL-HUSSAYEN** as the administrative contact person;

6

f.    www.ianaradionet.com, an Internet radio station, created on May 25, 1999 and registered to the IANA, with **AL-HUSSAYEN** as the head of its supervisory committee and a member of its technical committee;

g.    www.almawred.com, an Islam-related shopping website associated with the IANA, created on November 1, 1999 and registered to Dar Al-Asr, with **AL-HUSSAYEN** as the administrative contact person;

h.    www.liveislam.net, a website created on July 8, 2002 which, though never active, listed **AL-HUSSAYEN** as the sole registrant and designated administrator; and

i.    www.liveislam.com, a speech broadcast-facilitating Website, created on June 12, 2000, with **AL-HUSSAYEN** as a key administrator and providing technical support.

14.    At various times pertinent to this Second Superseding Indictment, **AL-HUSSAYEN** also provided internet-related services and assistance to Dar Al-Asr, including publication of material designed and intended to recruit mujahideen and raise funds for violent jihad.. Dar Al-Asr's principal website was www.alasr.net, which was created on August 15, 1999 and registered to Dar Al-Asr in **AL-HUSSAYEN's** name at his Moscow, Idaho, address. The website www.hccjrah.com was created on February 22, 2000 and registered to Dar Al-Asr, with **AL-HUSSAYEN** as the administrative contact person. The website www.alsunnah.com was created August 10, 2000, and registered to Dar Al-Asr, with **AL-HUSSAYEN** paying the invoice. As noted above, Dar Al-Asr was affiliated with a number of IANA websites, including www.alasr.ws, www.almanar.net, www.al-multaqa.com, www.iananet.org and www.ianaradionet.com.

15.    At various times pertinent to this Second Superseding Indictment, **AL-HUSSAYEN** also provided internet-related services to, for and on behalf of two prominent Saudi clerics including the publication of fatwas justifying violent jihad. Among other things, **AL-HUSSAYEN** registered the websites www.alhawali.org and www.alhawali.com for one of the clerics. These two websites were created on November 18, 2000 and, in their registration, referenced both Dar Al-Asr and **AL-HUSSAYEN**, with **AL-HUSSAYEN** as the administrative contact for www.alhawali.com. **AL-**

7

HUSSAYEN also helped administer www.islamtoday.net, a website for the second cleric. This website was created on March 17, 2000, registered to an official of Al-Haramain and linked to some of the other websites described above.

**Defendant's Solicitation Of Donations For**
**HAMAS, A Foreign Terrorist Organization**

16.    At all times pertinent to this Second Superseding Indictment, The Islamic Resistance Movement, also known as HAMAS, was a foreign terrorist organization, having been designated as such, effective October 8, 1997, pursuant to Section 219 of the Immigration and Nationality Act, and redesignated on October 8, 1999, October 5, 2001 and October 2, 2003.

17.    From in or around October 2000, to in or around September 2002, www.islamway.com, a website AL-HUSSAYEN helped create, operate and maintain, included links to a variety of articles, speeches and lectures promoting violent jihad in Israel. A page within the site also included a section titled with the question, "What is your role?" On the same page, that question was answered as follows:

> Participate with money, and this is [via] The Palestinian Information Center (the official mouthpiece of the Islamic Resistance Movement, HAMAS), which opens the door of donations for all Muslims to assist their brothers in their honorable jihad against the dictatorial Zionist Jewish enemy.

The page then provided a hyperlink to www.palestine-info.org "for donations" to HAMAS. The website www.al-multaqa.com, another site AL-HUSSAYEN helped create, operate and maintain, included a similar page devoted to violent jihad in Israel and also provided hyperlinks to www.palestine-info.org.

18.    During the same period of time, on or about April 15, 2002, AL-HUSSAYEN received an e-mail in which the sender forwarded a solicitation for donations to HAMAS for the purchase of weapons to fight against Israel. The original e-mail solicitation set forth in detail the cost of purchasing military-style weapons and ammunition, purported to be from "the battalion of the martyr Ezeldeen Al-Qassam" of "the military wing for the Islamic Resistance Movement," and stressed the need for money in order to arm fighters against the "Zionist occupiers."

8

**The Internet E-Mail Group: A Direct
Communication Platform For Recruitment
And Fundraising For Violent Jihad**

19.     Beginning in early 2000, visitors to www.islamway.com, www.al-multaqa.com and other sites were invited to sign up for an internet e-mail group, maintained and moderated by **AL-HUSSAYEN** and others, in order to obtain "news" of violent jihad in Chechnya.   An internet e-mail group is an internet facility that permits members to post e-mails, files (such as documents, images, and audio or video files), and links to other websites, to which other members then have access.  As moderator of the e-mail group,  **AL-HUSSAYEN** had the ability and authority to accept, retain and delete messages (also known as "postings" or "posts") posted to the group.

20.     This particular internet e-mail group was intended to permit members to post inquiries and information relating to violent jihad.  As such, it provided a communication platform for individuals who wished to engage in and recruit mujahideen for violent jihad, as well as to raise funds to support violent jihad.  Consistent with this theme, the invitation to join the internet e-mail group included a "Cry and Call" to Muslims exhorting them to "fight the idolater with your money, your selves, your tongues and your prayers."  The first posting on the internet e-mail group, on February 2, 2000, was an identical "Cry and Call" posted by **AL-HUSSAYEN** himself, one of numerous postings  he made to the group.

21.     Ultimately , this internet e-mail group grew to more than 2400 members.  Among the postings to the group were the following:

a.      A February 2, 2000 posting by **AL-HUSSAYEN** to all members of the group urging them to donate money to support those who were participating in violent jihad to provide "them with weapons and physical strength to carry on with the war against those who kill them."  This message was thereafter sent at the beginning of each month as a "monthly reminder" to donate money in support of violent jihad;

b.      A February 20, 2000 posting by **AL-HUSSAYEN** to all members of the group forwarding materials titled "Virtues of Jihad" that glorified those who die in battle while performing violent jihad.  The post explained that such people have their own place in heaven close to Allah, and that

the problem with Islam today is that Muslims have given up on violent jihad and are not practicing it enough;

c.    A February 25, 2000 posting responding to a specific request for information on how one could train for violent jihad. In the posting, a member of the internet e-mail group gave detailed instructions on how to travel to and train at a particular terrorist training camp outside of the United States;

d.    A July 14, 2001 posting that purported to be from a mujahid departing from Bosnia, and extolled the virtues of violent jihad. After this message was posted, other members of the group responded with further posts stating that they too had fought violent jihad;

e.    A February 25, 2003, posting that contained an "urgent appeal" to Muslims serving in the American military. The posting called upon such individuals to identify and provide information about potential targets for attacks, particularly in the Middle East. The long list of requested targets included American military bases, logistical support (including drinking water) for such bases, residences of civilian workers supporting bases, storage facilities for weaponry and ammunition, facilities of American oil companies, and routes followed by oil tankers. The posting also exhorted others to attack a specifically identified high-ranking American military official.

### Defendant's Efforts And Intent To Conceal The Provision Of Material Support And Resources

22.    On or about January 19, 2003, **AL-HUSSAYEN** and a co-conspirator whose identity presently is unknown to the Grand Jury discussed a plan to conceal from the authorities their participation in the broadcast of a lecture by one of the clerics described above, during which the cleric urged listeners to participate in violent jihad in Israel. In substance, **AL-HUSSAYEN** and the co-conspirator agreed that if they were questioned by the authorities about their activities, they would deny that they knew the nature of the materials they were broadcasting. Additionally, the two talked about ways they could structure the broadcast to permit them to make that denial.

10

## COUNT ONE

### CONSPIRACY TO PROVIDE AND CONCEAL
### MATERIAL SUPPORT OR RESOURCES TO TERRORISTS
### (Violation 18 U.S.C. 371 and 2339A)

23.    The Grand Jury repeats and realleges as if fully set forth herein the allegations contained in paragraphs 1 through 22 of this Second Superseding Indictment.

24.    From on or about September 13, 1994, to on or about February 26, 2003, in the District of Idaho, and elsewhere, the defendant, **SAMI OMAR AL-HUSSAYEN**, did knowingly conspire, combine, confederate, and agree with persons known and unknown to the Grand Jury, to provide material support and resources, and to conceal and disguise the nature, location, source and ownership of such material support and resources, knowing and intending they were to be used in preparation for and in carrying out a violation of Title 18, United States Code, Section 956 (conspiracy to kill, kidnap, maim, or injure persons or damage property in a foreign country), and in preparation for, and in carrying out, the concealment and an escape from the commission of such violation, in violation of Title 18, United States Code, Sections 2339A and 371.

25.    It was a part of the manner and means of the conspiracy that from on or about September 13, 1994, to on or about October 26, 2001, the defendant and others would provide material support and resources in the form of currency, financial services, communications equipment, and personnel.

26.    It was further a part of the manner and means of the conspiracy that from on or about October 26, 2001, to on or about February 26, 2003, the defendant and others would provide material support and resources in the form of currency, monetary instruments, financial services, expert advice and assistance, communications equipment, and personnel.

27.    In furtherance of the conspiracy and to achieve the illegal object thereof, the defendant and his co-conspirators committed and caused to be committed in the District of Idaho, and elsewhere, at least one of the overt acts described in paragraphs 5 through 22 of this Second Superseding Indictment.

11

## COUNT TWO

### PROVIDING AND CONCEALING MATERIAL SUPPORT AND RESOURCES TO TERRORISTS
(Violation 18 USC 2339A)

28.     The Grand Jury repeats and realleges as if fully set forth herein the allegations contained in paragraphs 1 through 22 of this Second Superseding Indictment.

29.     From on or about October 26, 2001, to on or about February 26, 2003, in the District of Idaho, and elsewhere, the defendant, **SAMI OMAR AL-HUSSAYEN**, did provide material support and resources, that is, currency, monetary instruments, financial services, expert advice and assistance, and communications equipment, and conceal and disguise the nature, location, source and ownership of such material support and resources, knowing and intending they were to be used in preparation for and in carrying out a violation of Title 18, United States Code, Section 956 (conspiracy to kill, kidnap, maim, or injure persons or damage property in a foreign country), and in preparation for, and in carrying out, the concealment and an escape from the commission of such violation, in violation of Title 18, United States Code, Sections 2339A and 2.

## COUNT THREE

### CONSPIRACY TO PROVIDE MATERIAL SUPPORT AND RESOURCES TO A DESIGNATED FOREIGN TERRORIST ORGANIZATION
(Violation 18 U.S.C. 2339B)

30.     The Grand Jury repeats and realleges as if fully set forth herein the allegations contained in paragraphs 1 through 22 of this Second Superseding Indictment.

31.     From in or around October, 2000, to in or around September, 2002, in the District of Idaho, and elsewhere, the defendant, **SAMI OMAR AL-HUSSAYEN**, did knowingly conspire, combine, confederate, and agree with persons known and unknown to the Grand Jury, to provide material support and resources, that is, currency, monetary instruments, financial services and communications equipment to a foreign terrorist organization, namely, the Islamic Resistance Group, also known as HAMAS, which was designated by the Secretary of State as a foreign terrorist organization on October 8, 1997, pursuant

12

to Section 219 of the Immigration and Nationality Act, and redesignated as such on October 8, 1999, October 5, 2001 and October 2, 2003.

32.     It was a part of the manner and means of the conspiracy that from in or around October 2000, to October 26, 2001, the defendant and others would provide material support and resources in the form of currency, financial services and communications equipment.

33.     It was further a part of the manner and means of the conspiracy that from on or about October 26, 2001, to in or around September 2002, the defendant and others would provide material support and resources in the form of currency, monetary instruments, financial services and communications equipment.

34.     In furtherance of the conspiracy and to achieve the illegal object thereof, the defendant and his co-conspirators committed and caused to be committed in the District of Idaho, and elsewhere, at least one of the overt acts described in paragraphs 16 through 18 of this Second Superseding Indictment.

## COUNTS FOUR THROUGH FOURTEEN:
## THE FALSE STATEMENT AND VISA FRAUD CHARGES

### Background

35.     An F-1 student visa is issued by the Department of State and authorizes the holder to apply for entry into the United States as a non-immigrant solely for the purpose of pursuing a course of study at a school in the United States.   Issuance of an F-1 visa is evidenced by a stamp in the passport of the student.

36.     As part of the process of obtaining an F-1 student visa, the school the foreign student proposes to attend must describe the student's planned course of study in an Immigration and Naturalization Service ("INS") Form I-20.  Once the school has completed the form, the student must sign a sworn certification on the same form which reads, in pertinent part, as follows:

> I have read and agreed to comply with the terms and conditions
> of my admission. . . . I certify that all information provided
> on this form refers specifically to me and is true and correct to

13

the best of my knowledge.  I certify that I seek to enter or remain in the United States temporarily, **and solely for the purpose of pursuing a full course of study at [the named school] . . . .** I also authorize the named school to release any information from my records which is needed. [emphasis added]

Additionally, the foreign student must truthfully and fully declare his associations with organizations so that United States Government authorities can evaluate the associations and their potential impact on United States interests.

37.    On or about September 23, 1998, the defendant, **SAMI OMAR AL-HUSSAYEN,** applied to the University of Idaho at Moscow, Idaho, by submitting an International Application Form requesting that he be admitted to the Computer Science Ph.D. program for the Spring 1999 Semester.  **AL-HUSSAYEN** was admitted to the program in or around January, 1999, and began his studies during the Spring 1999 semester.  At that time, **AL-HUSSAYEN** listed his permanent home address as 311 Sweet Ave., Apt. #6, Moscow, Idaho.

38.    During the ensuing years, as more fully described below, **AL-HUSSAYEN** made various false statements to and fraudulently concealed material facts from representatives of the United States Government regarding the nature of his activities and affiliations in the United States in order to enter and remain here.

### False And Fraudulent Statements During 1999

39.    On or about May 17, 1999, an INS Form I-20 was completed by the University of Idaho, describing **AL-HUSSAYEN's** planned course of study in the Computer Science Ph.D. program beginning no later than August 24, 1999, and ending no later than December 17, 2004.

40.    On or about July 17, 1999, while outside the United States, **AL-HUSSAYEN** signed the Student Certification portion of the INS Form I-20 confirming, under oath, that he wished to enter and remain in the United States "solely for the purpose of pursuing a full course of study at [the University of Idaho]." At the time, **AL-HUSSAYEN** knew that the certification was false insofar as he had

14

misrepresented and concealed his extensive internet and business-related activities the IANA, Al Haramain and/or others.

41.    On or about July 20, 1999, in reliance upon **AL-HUSSAYEN's** false and fraudulent statements, the United States Government issued an F-1 student visa to **AL-HUSSAYEN** at Riyadh, Saudi Arabia.  The visa was valid for twenty-four months until July 20, 2001.

42.    On or about August 11, 1999, based on his fraudulently obtained F-1 student visa, **AL-HUSSAYEN** was admitted by federal immigration authorities into the United States at John F. Kennedy International Airport in New York, New York, as an F-1 student.

### False And Fraudulent Statements During 2000

43.    On or about July 7, 2000, a second INS Form I-20 was completed by the University of Idaho for **AL-HUSSAYEN's** continued attendance at the school in connection with his course of study.

44.    On or about the same day, in Moscow, Idaho, **AL-HUSSAYEN** signed the Student Certification portion of the INS Form I-20 confirming, under oath, that he wished to enter and remain in the United States "solely for the purpose of pursuing a full course of study at [the University of Idaho]." At the time, **AL-HUSSAYEN** knew that the certification was false insofar as he had misrepresented and concealed his extensive internet and business-related activities the IANA, Al Haramain and/or others.

45.    On or about August 25, 2000, after he had returned to Saudi Arabia for a short time, **AL-HUSSAYEN** was admitted by federal immigration authorities into the United States at Washington-Dulles International Airport in Virginia as an F-1 student.  **AL-HUSSAYEN** was admitted by federal immigration authorities based on his fraudulently obtained F-1 student as extended by his July 7, 2000 fraudulent Form I-20 certification.

### False And Fraudulent Statements During 2002

46.    On or about January 13, 2002, after he had returned to Saudi Arabia for a short time, **AL-HUSSAYEN** signed and submitted to the United States Embassy in Riyadh, Saudi Arabia, a Department of State Form DS-156 for the purpose of obtaining another F-1 student visa.  On that form **AL-**

**HUSSAYEN** represented that he wished to enter the United States to "study"at the University of Idaho. He also stated his permanent address in the United States was 311 Sweet Ave., #6, Moscow, Idaho. Additionally, as part of his application for the F-1 student visa, **AL-HUSSAYEN** relied upon and/or submitted the INS Form I-20 dated July 7, 2000, as previously referenced.

47.    At the time of his submission of the Form DS-156, **AL-HUSSAYEN** knew that the information contained in the form was false insofar as he had misrepresented and concealed his extensive internet and business-related activities the IANA, Al Haramain and/or others.

48.    On or about January 14, 2002, **AL-HUSSAYEN** submitted a Department of State Form DS-157 to the United States Embassy at Riyadh, Saudi Arabia, in further support of his application for an F-1 student visa. On that form, **AL-HUSSAYEN** was required to "[l]ist all Professional, Social, and Charitable Organizations to Which You Belong (Belonged) or Contribute (Contributed) or with Which You Work (Have Worked)." In response, **AL-HUSSAYEN** listed "ACM & IEEE" ("ACM" is believed to be an acronym for the Association for Computive Machinery;"IEEE" is believed to be an acronym for the Institute of Electrical and Electronic Engineers).

49.    At the time of his submission of the Form DS-157, **AL-HUSSAYEN** knew that the information contained in the form was false insofar as he had misrepresented and concealed his extensive internet and business-related activities the IANA, Al Haramain and/or others.

50.    On or about March 19, 2002, a third INS Form I-20 was completed by the University of Idaho for **AL-HUSSAYEN's** continued attendance at the school in connection with his course of study.

51.    On or about April 6, 2002, **AL-HUSSAYEN** signed and submitted to the United States Embassy in Riyadh, Saudi Arabia, the Student Certification portion of the INS Form I-20 confirming, under oath, that he wished to enter and remain in the United States "solely for the purpose of pursuing a full course of study at [the University of Idaho]." At the time, **AL-HUSSAYEN** knew that the certification was false insofar as he had misrepresented and concealed his extensive internet and business-related activities the IANA, Al Haramain and/or others.

52.    On or about April 6, 2002, in reliance upon **AL-HUSSAYEN's** false and fraudulent statements, including those in his Form DS-156, Form DS-157, and April 6, 2002 INS Form I-20, the United States Government issued an F-1 student visa to **AL-HUSSAYEN** at Riyadh, Saudi Arabia.

53.    On or about May 9, 2002, based on his fraudulently obtained F-1 student visa, **AL-HUSSAYEN** was admitted by federal immigration authorities into the United States at John F. Kennedy International Airport in New York, New York.

## COUNT FOUR

### FALSE STATEMENT TO THE UNITED STATES
**(Violation 18 U.S.C. 1001(a)(2) and 3238)**

54.    The Grand Jury repeats and realleges as if fully set forth herein the allegations contained in paragraphs 35 through 42 of this Second Superseding Indictment.

55.    On or about July 17, 1999, in the District of Idaho, and elsewhere, the defendant, **SAMI OMAR AL-HUSSAYEN**, in a matter within the jurisdiction of the Executive Branch of the United States Government, knowingly and willfully made a materially false, fictitious and fraudulent statement and representation to authorities of the United States in relation to his status as a foreign student in the United States, in that **SAMI OMAR AL-HUSSAYEN**, in applying for and receiving a student visa, signed and submitted an Immigration and Naturalization (INS) Form I-20, in which he knowingly and willfully represented to United States Government authorities that he wished to enter and remain in the United States for the sole purpose of pursuing a full course of study at the University of Idaho, when, in truth and in fact, **SAMI OMAR AL-HUSSAYEN** knowingly had been, was and would be engaged in activities other than his course of study at the University of Idaho, including, but not limited to, his activities with the Islamic Assembly of North America; in violation of Title 18, United States Code, Sections 1001(a)(2) and 3238.

## COUNT FIVE

### VISA FRAUD
**(Violation 18 U.S.C. 1546(a) and 3238)**

17

56.     The Grand Jury repeats and realleges as if fully set forth herein the allegations contained in paragraphs 35 through 42 of this Second Superseding Indictment.

57.     On or about July 17, 1999, in the District of Idaho, and elsewhere, the defendant, **SAMI OMAR AL-HUSSAYEN**, (1) knowingly made under oath and subscribed as true to the United States a false statement with respect to a material fact in an application and other document required by the immigration laws and regulations of the United States and (2) knowingly presented such application and other document required by the immigration laws and regulations of the United States which contained a materially false statement, in that **SAMI OMAR AL-HUSSAYEN**, in applying for and receiving a student visa, signed and submitted an Immigration and Naturalization (INS) Form I-20, in which he knowingly and willfully represented to United States Government authorities that wished to enter and remain in the United States for the sole purpose of pursuing a full course of study at the University of Idaho, when, in truth and in fact, **SAMI OMAR AL-HUSSAYEN** knowingly had been, was and would be engaged in activities other than his course of study at the University of Idaho, including, but not limited to, his involvement with the Islamic Assembly of North America; in violation of Title 18, United States Code, Sections 1546(a) and 3238.

## COUNT SIX

### VISA FRAUD
### (Violation 18 U.S.C. 1546(a) and 3237)

58.     The Grand Jury repeats and realleges as if fully set forth herein the allegations contained in paragraphs 35 through 42 of this Second Superseding Indictment.

59.     On or about August 11, 1999, in the District of Idaho, and elsewhere, the defendant, **SAMI OMAR AL-HUSSAYEN**, (1) knowingly made under oath and subscribed as true to the United States a false statement with respect to a material fact in an application and other document required by the immigration laws and regulations of the United States, (2) knowingly presented such application and other document required by the immigration laws and regulations of the United States which contained a materially false statement, and (3) knowingly used a non-immigrant visa obtained by a false and fraudulent

18

statement and claim, in that **SAMI OMAR AL-HUSSAYEN**, in entering into the United States, presented to United States Government authorities a student visa procured by means of a false and fraudulent statement and claim and a document containing such false and fraudulent statement and claim; in violation of Title 18, United States Code, Sections 1546(a) and 3237.

## COUNT SEVEN

### FALSE STATEMENT TO THE UNITED STATES
### (Violation 18 U.S.C. 1001(a)(2) and 3238)

60.    The Grand Jury repeats and realleges as if fully set forth herein the allegations contained in paragraphs 35 through 38, and 43 through 45 of this Second Superseding Indictment.

61.    On or about July 7, 2000, in the District of Idaho, and elsewhere, the defendant, **SAMI OMAR AL-HUSSAYEN**, in a matter within the jurisdiction of the Executive Branch of the United States Government, knowingly and willfully made a materially false, fictitious and fraudulent statement and representation to authorities of the United States in relation to his status as a foreign student in the United States, in that **SAMI OMAR AL-HUSSAYEN**, in applying for and receiving a student visa, signed and submitted an Immigration and Naturalization (INS) Form I-20, in which he knowingly and willfully represented to United States Government authorities that he wished to enter and remain in the United States for the sole purpose of pursuing a full course of study at the University of Idaho, when, in truth and in fact, **SAMI OMAR AL-HUSSAYEN** knowingly had been, was and would be engaged in activities other than his course of study at the University of Idaho, including, but not limited to, his involvement with the Islamic Assembly of North America; in violation of Title 18, United States Code, Sections 1001(a)(2) and 3238.

## COUNT EIGHT

### VISA FRAUD
### (Violation 18 U.S.C. 1546(a) and 3238)

62.    The Grand Jury repeats and realleges as if fully set forth herein the allegations contained in paragraphs 35 through 38, and 43 through 45 of this Second Superseding Indictment.

19

63.    On or about July 7, 2000, in the District of Idaho, and elsewhere, the defendant, **SAMI OMAR AL-HUSSAYEN**, (1) knowingly made under oath and subscribed as true to the United States a false statement with respect to a material fact in an application and other document required by the immigration laws and regulations of the United States and (2) knowingly presented such application and other document required by the immigration laws and regulations of the United States which contained a materially false statement, in that **SAMI OMAR AL-HUSSAYEN**, in applying for and receiving a student visa, signed and submitted an Immigration and Naturalization (INS) Form I-20, in which he knowingly and willfully represented to United States Government authorities that he wished to enter and remain in the United States for the sole purpose of pursuing a full course of study at the University of Idaho, when, in truth and in fact, **SAMI OMAR AL-HUSSAYEN** knowingly had been, was and would be engaged in activities other than his course of study at the University of Idaho, including, but not limited to, his involvement with the Islamic Assembly of North America;  in violation of Title 18, United States Code, Sections 1546(a) and 3238.

## COUNT NINE

### VISA FRAUD
### (Violation 18 U.S.C. 1546(a) and 3237)

64.    The Grand Jury repeats and realleges as if fully set forth herein the allegations contained in paragraphs 35 through 38, and 43 through 45 of this Second Superseding Indictment.

65.    On or about August 25, 2000, in the District of Idaho, and elsewhere, the defendant, **SAMI OMAR AL-HUSSAYEN**, (1) knowingly made under oath and subscribed as true to the United States a false statement with respect to a material fact in an application and other document required by the immigration laws and regulations of the United States, (2) knowingly presented such application and other document required by the immigration laws and regulations of the United States which contained a materially false statement, and (3) knowingly used a non-immigrant visa obtained by a false and fraudulent statement and claim, in that **SAMI OMAR AL-HUSSAYEN**, in entering into the United States, presented to United States Government authorities a student visa procured by means of a false and fraudulent

20

statement and claim and a document containing such false and fraudulent statement and claim; in violation of Title 18, United States Code, Sections 1546(a) and 3237.

## COUNT TEN

### FALSE STATEMENT TO THE UNITED STATES
(Violation 18 U.S.C. 1001(a)(2) and 3238)

66.    The Grand Jury repeats and realleges as if fully set forth herein the allegations contained in paragraphs 35 through 38, and 46 through 53 of this Second Superseding Indictment.

67.    On or about January 14, 2002, in the District of Idaho, and elsewhere, the defendant, **SAMI OMAR AL-HUSSAYEN**, in a matter within the jurisdiction of the Executive Branch of the United States Government, knowingly and willfully made a materially false, fictitious and fraudulent statement and representation to authorities of the United States in relation to his status as a foreign student in the United States, in that **SAMI OMAR AL-HUSSAYEN**, in applying for and receiving a student visa, signed and submitted Department of State (DOS) Forms DS-156 and DS-157, in which he knowingly and willfully concealed from United States Government authorities his involvement with the Islamic Assembly of North America and other entities; in violation of Title 18, United States Code, Sections 1001(a)(2) and 3238.

## COUNT ELEVEN

### VISA FRAUD
(Violation 18 U.S.C. 1546(a) and 3238)

68.    The Grand Jury repeats and realleges as if fully set forth herein the allegations contained in paragraphs 35 through 38, and 46 through 53 of this Second Superseding Indictment.

69.    On or about January 14, 2002, in the District of Idaho, and elsewhere, the defendant, **SAMI OMAR AL-HUSSAYEN**, (1) knowingly made under oath and subscribed as true to the United States a false statement with respect to a material fact in an application and other document required by the immigration laws and regulations of the United States and (2) knowingly presented such application and other document required by the immigration laws and regulations of the United States which contained a

materially false statement, in that **SAMI OMAR AL-HUSSAYEN**, in applying for and receiving a student visa, signed and submitted Department of State (DOS) Forms DS-156 and DS-157, in which he knowingly and wilfully concealed from United States Government authorities his involvement with the Islamic Assembly of North America and other entities; in violation of Title 18, United States Code, Sections 1546(a) and 3238.

**COUNT TWELVE**

**FALSE STATEMENT TO THE UNITED STATES**
**(Violation 18 U.S.C. 1001(a)(2) and 3238)**

70.     The Grand Jury repeats and realleges as if fully set forth herein the allegations contained in paragraphs 35 through 38, and 46 through 53 of this Second Superseding Indictment.

71.     On or about April 6, 2002, in the District of Idaho, and elsewhere, the defendant, **SAMI OMAR AL-HUSSAYEN**, in a matter within the jurisdiction of the Executive Branch of the United States Government, knowingly and willfully made a materially false, fictitious and fraudulent statement and representation to authorities of the United States in relation to his status as a foreign student in the United States, in that **SAMI OMAR AL-HUSSAYEN**, in applying for and receiving a student visa, signed and submitted an Immigration and Naturalization (INS) Form I-20, in which he knowingly and willfully represented to United States Government authorities that he wished to enter and remain in the United States for the sole purpose of pursuing a full course of study at the University of Idaho, when, in truth and in fact, **SAMI OMAR AL-HUSSAYEN** knowingly had been, was and would be engaged in activities other than his course of study at the University of Idaho, including, but not limited to, his involvement with the Islamic Assembly of North America; in violation of Title 18, United States Code, Sections 1001(a)(2) and 3238.

**COUNT THIRTEEN**

**VISA FRAUD**
**(Violation 18 U.S.C. 1546(a) and 3238**

22

72.    The Grand Jury repeats and realleges as if fully set forth herein the allegations contained in paragraphs 35 through 38, and 46 through 53 of this Second Superseding Indictment.

73.    On or about April 6, 2002, in the District of Idaho, and elsewhere, the defendant, **SAMI OMAR AL-HUSSAYEN**, (1) knowingly made under oath and subscribed as true to the United States a false statement with respect to a material fact in an application and other document required by the immigration laws and regulations of the United States and (2) knowingly presented such application and other document required by the immigration laws and regulations of the United States which contained a materially false statement, in that **SAMI OMAR AL-HUSSAYEN**, in applying for and receiving a student visa, signed and submitted an Immigration and Naturalization (INS) Form I-20, in which he knowingly and willfully represented to United States Government authorities that he wished to enter and remain in the United States for the sole purpose of pursuing a full course of study at the University of Idaho, when, in truth and in fact, **SAMI OMAR AL-HUSSAYEN** knowingly had been, was and would be engaged in activities other than his course of study at the University of Idaho, including, but not limited to, his involvement with the Islamic Assembly of North America;  in violation of Title 18, United States Code, Sections 1546(a) and 3238.

## COUNT FOURTEEN

### VISA FRAUD
(Violation 18 U.S.C. 1546(a) and 3237)

74.    The Grand Jury repeats and realleges as if fully set forth herein the allegations contained in paragraphs 35 through 38, and 46 through 53 of this Second Superseding Indictment.

75.    On or about May 9, 2002, in the District of Idaho, and elsewhere, the defendant, **SAMI OMAR AL-HUSSAYEN**, (1) knowingly made under oath and subscribed as true to the United States a false statement with respect to a material fact in an application and other document required by the immigration laws and regulations of the United States, (2) knowingly presented such application and other document required by the immigration laws and regulations of the United States which contained a materially false statement, and (3) knowingly used a non-immigrant visa obtained by a false and fraudulent statement and claim, in that **SAMI OMAR AL-HUSSAYEN**, in entering into the United States, presented

23

to United States Government authorities a student visa procured by means of a false and fraudulent statement and claim and a document containing such false and fraudulent statement and claim; in violation of Title 18, United States Code, Sections 1546(a) and 3237.

Dated this 3ʳᵈ day of March, 2004.

A TRUE BILL

*Kristine J. Crawford*
FOREPERSON

THOMAS E. MOSS
UNITED STATES ATTORNEY

KIM R. LINDQUIST
Assistant United States Attorney

TERRY L. DERDEN
First Assistant United States Attorney
Chief, Criminal Section

DAVID B. DEITCH
Trial Attorney

24

# CRIMINAL COVERSHEET

DEFENDANT'S NAME:   Sami Omar Al-Hussayen

Juvenile:   No

DEFENSE ATTORNEY:   David Nevin
Address                          Post Office Box 2772
                                     Boise, Idaho 83701

Service   2004 MAR -4  AM 10: 36
Type:       Warrant/ Non-Secret

Interpreter:   No
If yes, language:

Telephone No.:
INVESTIGATING
AGENCY & AGENT:     FBI, Michael J. Gneckow
                                 (208) 664-5128

## CR 03 - 0048 - C - EJL

CASE INFORMATION: (List any miscellaneous, magistrate, CVB or other related defendants/case numbers.)
Cr-03-048-C-EJL

## CRIMINAL CHARGING INFORMATION

| Complaint | _ Indictment | Information | Yes Superseding Indictment |
|---|---|---|---|
| Yes  Felony | ___Class A Misdemeanor | | _ Class B or C Misdemeanor (Petty Offense) |
| County of Offense:  Latah | | Estimated Trial Time:   4 weeks | |

| TITLE/SECTION | COUNTS | BRIEF DESCRIPTION | PENALTIES (Include Supervised Release and Special Assessments) |
|---|---|---|---|
| 18 U.S.C. §§ 371 and 2339A | 1 | Conspiracy to Provide Material Support Or Resources to Terrorists | Incarceration for not more than 15 years and/or $250,000 fine; 5 years supervised release; $100 special assessment |
| 18 U.S.C. § 2339A | 2 | Providing and Concealing Material Support and Resources to Terrorists | Incarceration for not more than 15 years and/or $250,000 fine; 15 years supervised release; $100 special assessment |
| 18 U.S.C. § 2339B | 3 | Conspiracy to Provide Material Support and Resources to a Designated Foreign Terrorist Organization | Incarceration for not more than 15 years and/or $250,000 fine; 15 years supervised release; $100 special assessment |
| 18 U..S.C. §§ 1001(A)(1) AND (2), 3238 | 4, 7, 10, 12 | False Statement to the United States | Each Count:  Incarceration for not more than 5 years and/or $250,000 fine; 3 years supervised release; $100 special assessment |
| 18 U.S.C. §§ 1546(A), 3237, 3238 | 5, 6, 8, 9, 11, 13, 14 | Visa Fraud | Each Count: Incarceration for not more than 25 years and/or $250,000 fine; 5 years supervised release; $100 special assessment |

Date:   March 3, 2004

AUSA: KIM R. LINDQUIST
Telephone No.:  334-1211